PATTERSON SHRIMP COMPANY, Inc., Libellant,

v.

The O/S FREEDOM, her engines, tackle, apparel, etc., and Mitchel Charles Vining and Rose Marie Vining, Owners, Respondents.

No. 394.

United States District Court
S. D. Texas,
Brownsville Division.

Dec. 28, 1962.

Sharpe & Hardy, Benjamin S. Hardy, Brownsville, Tex., for libellant.

Theodore G. Schirmeyer and L. G. Kratochvil, Houston, Tex., for intervenors Corbitt Marine Ways, Inc., Independent Shrimp Supply, Inc., Eugene H. Toomer, d/b/a Fritz Toomer Packing Co., E. J. Toomer, Jr. and Jeanette Toomer d/b/a Coral Shrimp Co., and Wilson Oil Co.

Ellis & Andrews, Thomas M. Andrews, Aransas Pass, Tex., for intervenor Ballard Johnson.

Rentfro & Rentfro, Daniel L. Rentfro, Brownsville, Tex., for intervenors Border Marine Ways, Inc. and Seaport Service & Supply, Inc.

GARZA, District Judge.

This case involves the priority between a preferred mortgage held by Libellant on the O/S FREEDOM and maritime liens held by intervening libellants, some arising before the execution of the mortgage, and some after.

The validity of the mortgage and its perfection in accordance with the Ship Mortgage Act is not questioned; but the mortgagee contends that the maritime liens claimed by Border Marine Ways, Inc. and Seaport Service and Supply, Inc. are barred by laches or at least have lost their preferred lien status as against the preferred ship mortgage.

In this case, the services and supplies giving rise to the claimed preferred maritime liens were furnished during April, 1960. On January 19, 1961, the preferred mortgage was executed, and on January 21, 1961, was recorded by the Collector of Customs and endorsed on the ship's documents. Partial payments on one of these accounts were made by the owner on September 13, 1960, on December 1, 1960, and the last on July 29, 1961.

The question of laches arose in this District in Gulf Coast Marine Ways, Inc. v. The J. R. Hardee, et al. (D.C.S.D. Texas 1952), 107 F.Supp. 379. Judge Allred there held that preferred maritime lienholders who had taken no steps to perfect their liens for more than one year before the original libel was filed,

lost their priority over a subsequent preferred ship mortgage.

The question was again considered in National Shawmut Bank v. The Winthrop, &c. (D.C.Mass.1955), 134 F.Supp. 370. Here it was held that preferred maritime lienholders would not be barred unless they were guilty of laches at the date of the mortgage. The question was approached from the standpoint of the reasonable presumed expectation of the parties at the time their lien arose. Since a mortgagee could not be placed in any worse position by a preferred lienholder's inaction after the date of the mortgage, then a preferred maritime lien should not lose its status at a later date.

This Court must choose between these two applications of a twelve month rule and determine whether a maritime lien will be barred by laches if not perfected within twelve months preceding the filing of a libel against the vessel, or within twelve months preceding the date of the mortgage.

It seems more reasonable to apply the doctrine of the Shawmut Bank case and establish the rule that preferred maritime liens arising less than twelve months before the date of a preferred ship mortgage will not be barred by laches. Of course the calendar year rule would still apply to all liens arising subsequent to the mortgage.

In this case the maritime liens of Border Marine Ways, Inc. and Seaport Service and Supply, Inc. arose less than nine months before the preferred mortgage and are not barred by laches.

The question of occasional payments being made on one of the liens would have no effect on the status of the lien as against other lienholders, but would only relate to the validity of the lien as against the owner of the vessel.

The maritime liens claimed by Ballard Johnson, Manager of Johnson & Johnson Processors, Inc. may also be disposed of here, although counsel did not appear at the hearing and has not submitted a brief on the question. The

lien assigned to Johnson by Clift Kinkade arose on November 10, 1959, and under any application of the twelve months rule would be barred by laches. The claim assigned to Johnson by Garrett Marine Service arose during the months of March through October, 1961, subsequent to the date of the preferred mortgage, and are, therefore, inferior.

The remaining claims by intervening libellants have been disposed of by stipulation between the parties.

This Court holds that the order of payment should be as follows:

1) All court costs, including sums advanced by the parties, respectively;

2) The ante-mortgage liens arising within the twelve months preceding the date of the mortgage;

3) The mortgage;

4) Any post-mortgage liens on the calendar year basis.

Clerk will notify counsel to submit a decree accordingly.